RECEIVED
IN LAKE CHARLES, LA
JAN 24 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| FRANKIE BROUSSARD | : | DOCKET NO. 2:04 CV 1986 |
| VS. | : | JUDGE MINALDI |
| CONOCOPHILLIPS COMPANY | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court are cross motions for Summary Judgment [docs. 14 and 18], as well as ConocoPhillip's Reply to the plaintiff's cross Motion for Summary Judgment.

Facts

The pertinent facts of this case are undisputed and although there is a trial date of February 21, 2006, the parties agree that this issue should be resolved on summary judgment.

The plaintiff, Frankie Broussard ("Broussard"), was employed by a contract agency and worked at Phillips Petroleum Company ("Phillips") in Lafayette, Louisiana, from January 1, 1979 until February 12, 1990 when she accepted a regular, full-time position with Phillips.[1] From January 1, 1979 to February 12, 1990, Broussard was paid directly by a third party contractor, who in turn billed Phillips for her services.[2] Broussard began receiving employee benefits from February 12,

---

[1] Complaint ¶¶ 9-10, 12; Answer ¶9-10, 12.

[2] Complaint ¶10; Answer ¶10.

1990.[3] Broussard's employment with Phillips ended in October 2000[4], when she retired. Broussard was paid directly by Phillips from February 12, 1990 until her retirement.

On February 12, 2004, Broussard made a claim for retroactive benefits from the Retirement and Savings Plans for the period between January 1, 1979 and March 12, 1990[5] under the theory that she was a common law employee of Phillips during this time period.[6] On March 31, 2004, James McMoran, Plan Benefits Administrator ("Plan Administrator") for both the Retirement and the Savings Plans, denied Broussard's claim for retroactive benefits after determining that she was not a person on the company's direct dollar payroll between January 1, 1979 and February 12, 1990.[7]

McMoran advised Broussard that she had a right to appeal his decision to the separate Plan committees. Broussard was also advised that she could submit more information or documentation if she wished, and the committees would consider such information as they made their final determinations.[8]

On May 5, 2004, Broussard appealed the Plan Administrator's decision to the Plan Committees. The appeals were filed separately.[9] Broussard based her appeals on her alleged common law employee status and on language contained in the Retirement and Savings Plan that

---

[3] Answer ¶ 13

[4] Answer ¶14.

[5] The March 12, 1990 dates appears throughout the administrative records. Both parties agree that the correct date should be February 12, 1990.

[6] Knickel Decl. ¶4, defendant's Exhibit C at pp. 17-18; E at pp. 17-18.

[7] Knickel Decl. ¶5, defendant's exhibit C at pp. 22-23; E at pp. 20-21.

[8] Knickel Decl. ¶¶9-10, 17-18, defendant's exhibit C at pp. 25-26; E at pp. 23-24.

[9] Knickel Decl. ¶¶9-10, 17-18, defendant's exhibit C at pp. 25-26; E at pp. 23-24.

2

further defined an employee as a "person on loaned service pursuant to the Company's standard personnel practices."[10] In her appeal, the plaintiff did not submit further information or documentation to the Retirement or Savings Plan committees for consideration.

On June 24, 2004, the Retirement and Savings Plans Committees conducted a final level review and denied Broussard's claims for retroactive benefits.[11] The decision to deny retroactive benefits was based on the fact that Broussard was not a person on the direct dollar payroll of Phillips (or any of its subsidiaries that adopted the Plans) until February 12, 1990.[12] The Plan Committees also concluded that Broussard was not a loaned service employee entitled to retroactive benefits.[13]

Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with

---

[10] Knickel Decl. ¶¶ 9-10, 17-18, Defendant's Exhibit C at pp. 25-26; E at pp. 23-24.

[11] Knickel Decl. ¶¶ 6, 10-1, 18-19, Defendant's Exhibit C at pp.1-2; E at pp.1-2.

[12] Knickel Decl. ¶¶ 13, 21.

[13] Knickel Decl. ¶¶ 13, 21.

3

affidavits, that demonstrate the absence of a genuine issue of material fact.[14] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at 2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also *Topalian*, 954 F.2d at 1131.

Law and Analysis

Jurisdiction

Broussard's claim to recover long term disability payments "relates to an employee benefit Plan" thus falling within the scope of ERISA's preemption provision. "It is clear that ERISA preempts a state law cause of action brought by an ERISA Plan participant or beneficiary alleging

---

[14] FN1. A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*, see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

improper processing of a claim for Plan benefits." *Memorial Hosp.*, 904 F.2d at 245 (*citing Pilot Life Ins. Co.*, 481 U.S. at 48, 107 S.Ct. at 1553). As an employee Broussard comes under the rubric of ERISA as a participant, 29 U.S.C. §§ 1002(7). She is able to assert her claim pursuant to ERISA's civil enforcement provision, 29 U.S.C. §§ 1132(a)(1)(B). The Supreme Court has held that any suit falling within this provision, even if it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. *Metropolitan Life*, 481 U.S. at 62, 107 S.Ct. at 1545. Broussard claims a violation of ERISA when she alleges a denial of benefits. A federal question exists on her claim and jurisdiction properly lies with this court. *Hubbard*, 42 F.3d at 945.

Standard of Review for Plan decisions

A denial of ERISA benefits by a Plan administrator is reviewed by the courts *de novo* unless the Plan gives the Plan administrator "discretionary authority to determine the eligibility for benefits or to construe the terms of the Plan." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir.1994)(*quoting Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)). *Southern Farm Bureau Life Insurance Co. v. Moore*, 993 F.2d 98 (1993), holds that because ERISA does not dictate the appropriate standard of review for evaluating benefit determinations of Plan administrators, courts must first look to the Plan terms to determine if the Plan administrator has the discretionary authority to interpret the Plan terms. 993 F.2d at 100.

The abuse of discretion standard is the appropriate standard of review for challenges to a Plan administrator's interpretation of the Plan terms when that Plan grants the administrator the authority to make a final and conclusive determination of the claim. *Duhon*, 15 F.3d at 1305 (*citing Bruch*, 489 U.S. at 115, 109 S.Ct. at 956). In applying the abuse of discretion standard, the court must analyze whether the Plan administrator acted arbitrarily or capriciously. *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 829 (5th Cir.1996).

Broussard is seeking retroactive benefits from the Retirement Plan and the Savings Plan.

Both of these Plans are self-funded employee benefit Plans established and maintained by ConocoPhillips for the benefit of its employees. Because ConocoPhillips is both the insurer and the claim administrator of these Plans, the Court must apply a "sliding scale standard" to the abuse of discretion test and give the Committees' decisions a lesser degree of deference than would be given the decision of an administrator who does not have a conflict of interest.

Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion. Since *Bruch*, the Fifth Circuit struggled with the appropriate standard of review for determinations by a self-interested administrator with discretionary authority. *See, Salley v. E.I. DuPont De Nemours & Co.* 966 F.2d 1011 (5th Cir.1992) (holding that a conflict of interest required the court to more closely examine the denial of health care benefits under the Plan); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1306 (5th Cir.1994) (holding that court must "weigh this possible conflict as a factor in our determination of whether the Plan administrator abused his discretion, instead of ... altering the applicable standard of review"); *Sweatman v. Commercial Union Insurance Co.*, 39 F.3d 594, 599 (1994) (holding that conflict does not change the standard of review, but should be weighed in determining whether administrator abused his discretion); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638-42 (5th Cir.1992)("We note that the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions--more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is....").

Under this "sliding scale" standard, the court always applies the abuse of discretion standard, but gives less deference to the administrator in proportion to the administrator's apparent conflict. An example of this approach is the Fourth Circuit decision in *Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80 (4th Cir.1993): "We hold that when a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather,

we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict."*Id.* at 86; *see also Chambers,* 100 F.3d at 826 (holding "that the sliding scale approach more closely adheres to the Supreme Court's instruction to treat a conflict of interest as a 'facto[r] in determining whether there is an abuse of discretion' "); *Sullivan v. LTV Aerospace & Defense Co.,* 82 F.3d 1251, 1255 (2d Cir.1996); *Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1474 (9th Cir.1993); *Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048, 1052-53 (7th Cir.1987).

Process for Reviewing Administrator's Denial of Benefits

In the Fifth Circuit, a two-part test is utilized when reviewing a Plan administrator's denial of benefits: First, a court must determine the legally correct interpretation of the Plan. If the administrator did not give the Plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the Plan was legally correct, a court must consider: (1) whether the administrator has given the Plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the Plan, and (3) any unanticipated costs resulting from different interpretations of the Plan. *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637-638 (citations omitted); *Gosselink v. American Tel. & Tel., Inc.,* 272 F.3d 722, 726 (C.A.5 (Tex.),2001).

If a court concludes that the administrator's interpretation is legally incorrect, the court must then determine whether the administrator abused his discretion. Three factors are important in this analysis: (1) the internal consistency of the Plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith. *Id.* "Only if the court determines that the administrator did not give the Plan the legally incorrect interpretation, must the court then determine whether the administrator's decision was an abuse of discretion." *Gosselink*

7

v. *American Tel. & Tel., Inc.*, 272 F.3d 722, 726 (C.A.5 (Tex.),2001).

An ERISA claim administrator's determination is not an abuse of discretion when it is supported by substantial evidence. *Meditrust Fin. Sers. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). When reviewing an administrator's determinations, the court is limited to the evidence in the administrative record at the time the determination was made. *Gooden v. Provident Life & Accident Ins.*, 250 F.3d 329, 333 (5th Cir. 2001).

The Plans

Both the Retirement and the Savings Plan provide that an employee is eligible if the employee is on the direct dollar payroll of the company.[15] Although Broussard's salary was paid by a third party contractor at the time for which she is seeking retroactive benefits, Broussard alleges that she was a common law employee of Phillips entitled to retroactive benefits from the Plans.[16]

The Retirement Plan granted to the Retirement Plan Committee full discretionary authority to "interpret and construe the Plan" and to "review any disputes or claims which may arise under the Plan, following review by the Plan Benefits Administrator."[17] Under the terms of the Retirement Plan, the Retirement Plan Committee has "absolute discretion in carrying out its responsibilities, and all interpretations, findings of fact and resolutions described...which are made by the Committee shall be binding, final and conclusive of all parties."[18]

The Savings Plan granted to the Plan Committee full discretionary authority to "interpret and administer the Plan and Trust, including the resolution of ambiguities, inconsistencies and omissions" and to "review and resolve any disputes or claims that may arise under the Plan,

---

[15] The are no genuine issues of material fact involved in this motion. Both parties agree that summary judgment is appropriate. This motion involves a question of contract interpretation, not a factual dispute.

[16] Complaint ¶¶ 11, 17.

[17] Knickel Decl. ¶8, Defendant's Exh B at pp. 13-14.

[18] Knickel Decl. ¶8, Defendant's Exh B at pp. 13-14.

following initial resolution by the Plan Benefits Administrator."[19]

Eligibility for benefits is governed in the first instance by the plain meaning of the Plan language. *Gosselink v. American Tel. & Tel., Inc.*, 272 F.3d 722, 727 (C.A.5 (Tex.), 2001).

The first step in reviewing a Plan administrator's denial of benefits under *Wildbur* is to determine if the administrator has applied a legally correct interpretation of the Plan. The first step of this analysis is determining whether the administrator has given the Plan a uniform construction. Broussard's demand is the first time that the Plan Committees were called upon to make a final determination of whether a "contract employee" should be considered an "eligible employee" under the Plans. The clear and unambiguous language of both the Retirement Plan and the Savings Plan in effect at the time for which Broussard is claiming retroactive benefits defined an "eligible employee" as "a person on the company's direct dollar payroll" and "a person on loaned service pursuant to the company's standard personnel practices."[20] These definitions have been uniformly applied. A person like Broussard (whose services were provided by a third party) does not fall within the definition of a loaned employee under the company's loaned service policy.[21]

The second step of this analysis is the determination of whether the interpretation by the administrators of the term "eligible employee" under both the Retirement Plan and the Savings Plan is consistent with a fair reading of the Plans and the third step is to determine if there would be any

---

[19] Knickel Decl. ¶15, Defendant's Exh D at p. 64.

[20] Knickel Decl. at p. 38. The loaned service policy allows a service employee to continue participation in one or more of the benefits Plans just as though that employee was in continuous employment with the company. This policy covered an employee that was loaned out to government service, for company desired training, or to perform services for an entity that Phillips, or one of its subsidiaries, owns an interest in. Broussard was not a "loaned service employee." She worked for a separate company and was loaned to Phillips. She never alleged that she worked for Phillips and was loaned to another company.

[21] Knickel Decl. at p. 358-60.

9

unanticipated costs resulting from a different interpretation of the Plan.[22] While it is undisputed that Broussard's services were provided by a third party employer, she is essentially asking that the court find that this definition of "an employee" in the Plans be construed to include the inverse: an employee of a third party who is performing services for Phillips. This interpretation is precluded by the clear language of the Plans. Thus, the Plan administrators' interpretations of the language is consistent with a fair reading of the Plans. There would undoubtedly be substantial unanticipated costs resulting from an interpretation of the Plans to include in the Company's Retirement and Savings Plans all third party employees.

The Fifth Circuit has held that a Plan administrator's decision to exclude leased employees from an ERISA Plan is legally correct under *Wildbur, id. See MacLachlan v. Exxon Mobil Corporation*, 350 F.3d 472 (5th Cir. 2003), *cert. denied*, 541 U.S. 1072, 124 S.Ct. 2413, 158 L.Ed.2d 981 (2004). In *MacLachlan*, the plaintiff requested retroactive benefits because he was a common law employee of Mobil, a term which he argued should be read to fit within the Plan's definition of a regular employee. Under the relevant Mobil Plan, eligibility was restricted to "regular employees." One of the definitions of "employee" under the Mobil Plan specifically excluded employees of third parties and independent contractors, regardless of common law employment principles. *MacLachlan*, 350 F.3d at 476. Based upon the contract between Exxon Mobil and the provider of the contract employee, the court found that it was reasonable for an administrator to conclude that a person who performed services for Mobil under such terms was not a regular employee entitled to benefits. *Id.*, at 481. In the instant case, as in *MacLachlan*, the ConocoPhillips Plans administrators' decision to exclude leased employees from the ConocoPhillips Plans is legally correct. It is reasonable, under the language of both Plans, for the administrators to find that Broussard, an employee of a third-party contractor, was not an "employee" entitled to benefits under the Plans. Because this court finds a legally correct Plan interpretation, the court need not determine

---

[22] See *Wildbur, Id.*

if the administrators' decision was an abuse of discretion.[23]

In her cross-motion, Broussard seeks only summary judgment based upon arguments regarding the Savings Plan. Broussard admits that she was paid by a third-party contractor while working for ConocoPhillips from January 1, 1979 to February 12, 1990.[24] She admits that she began to be paid by ConocoPhillips after February 12, 1990.[25] She admits that the Savings Plan in effect at the time for which she is seeking retroactive benefits defined an eligible employee as a person on the company's direct dollar payroll.[26] Broussard also admits that the Summary Plan Description (SPD) for the Savings Plan that was in effect at the time for which she is seeking retroactive benefits also defined an eligible employee as a person on the company's direct dollar payroll.[27]

Broussard advances only one argument concerning the 1977 and 1981 SPD's for the Savings Plan. Broussard argues that there is an ambiguity in the 1977 and 1981 SPD's concerning the definition of an eligible employee and there is an ambiguity between the SPD's and the actual language of the Savings Plan.[28] Broussard did not raise this issue at the administrative level, thus the court is precluded from considering it. See *Wildbur* at 637-638.

---

[23] *Wildbur, id. at 637-638.*

[24] Plaintiff's Memorandum in Support of Cross-Motion for Summary Judgment, p.1

[25] *Id.*

[26] *Id.*

[27] *Id.* at pp.1-2, 3.

[28] Broussard alleges an ambiguity in the 1977 and 1981 SPD's. On page 8 of the 1977 SPD, an eligible employee is defined: "[t]o become eligible to join and make monthly payments into the Plan, you must...be on the direct dollar payroll of a company which has adopted the Plan..or be on loaned service from such a company." On pages 44-45 of the 1977 SPD, there is a list of companies that had adopted the Plan and it states that "[t]heir employees may become eligible to participate in the Plan." The applicable portions of the 1981 SPD are identical to the 1977 SPD. Broussard argues that because the reference to employees on pages 44-45 does not use the "direct dollar payroll" language, this creates an ambiguity within the SPDs and with the Savings Plan.

## Conclusion

Accordingly, the court will grant the defendant's summary judgment and deny the plaintiff's cross-motion for summary judgment.

Lake Charles, Louisiana, this 22 day of January, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE